Scott M. Riemer (SR 5005)
RIEMER HESS LLC
Attorneys for Plaintiffs
275 Madison Avenue, 26th Floor
New York, New York 10016
(212) 297-0700
sriemer@riemerhess.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLIN D., a minor, and JOSEPH D., individually, and as guardian of Colin D.,<br><br>         Plaintiffs,<br><br> -against-<br><br>MORGAN STANLEY MEDICAL PLAN;<br>OPTUM GROUP, LLC; and<br>UNITED BEHAVIORAL HEALTH, INC.<br><br>         Defendants. | Index No. 1:20-cv-9120<br><br>**COMPLAINT**<br><br>ECF CASE |

   Plaintiffs Colin D., a minor, and Joseph D., individually and as guardian of Colin D., by their attorneys Riemer Hess LLC, complaining of unlawful conduct by Defendants Morgan Stanley Medical Plan ("the Plan"); Optum Group, LLC ("Optum"); and United Behavioral Health, Inc. ("UBH"), allege:

   1.  This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, et seq., for violations of the Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act") and to recover prejudgment interest, attorneys' fees, and costs.

   2.  This Court has subject matter jurisdiction pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.  Under Section 502(f) of ERISA, 29 U.S.C. §

1132(f), this Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3. Venue is properly in this District pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the breaches took place in this District and the Defendants reside in or may be found in this District.

## THE PARTIES

4. Joseph D. was and is an employee of Morgan Stanley & Co., LLC, as a benefit of which employment he, his spouse, and his dependents are covered by the Plan.

5. Upon information and belief, the Plan is self-insured by Morgan Stanley & Co., LLC and, therefore, benefits provided under the Plan are ultimately paid for by Morgan Stanley & Co., LLC.

6. Joseph D. is Colin D.'s father.

7. Colin D. is a minor dependent of Joseph D.

8. Plaintiffs have standing to bring this action pursuant to 29 U.S.C. §1132(a)(1)(B).

9. Optum, as a claims administrator of the Plan, devised and promulgated the Level of Care Guideline for the Mental Health Residential Treatment Center Level of Care (the "Optum Guideline").

10. UBH, a subsidiary of Optum, is the claims administrator of the Outpatient Mental Health & Substance Abuse portion of the Plan.  UBH was the decision-maker in Plaintiffs' claim for benefits.

## STANDARD OF REVIEW

11. This case is subject to a *de novo* review because the Plan does not contain an effective grant of discretionary authority to UBH.

12. Even if the Plan did grant discretionary authority to UBH, this matter is still subject to a *de novo* review due to UBH's procedural violations.

13. During the claims and administrative review process UBH failed to comply with the Department of Labor's claims-procedure regulations, and its failure to comply was neither inadvertent nor harmless.

14. Upon information and belief, UBH has not adopted claims procedures in accordance with the Department of Labor regulations.

15. Due to UBH's procedural violations, UBH forfeited its entitlement to any deference granted by the plan document.

16. For these reasons, this case is subject to a *de novo* review.

## THE CONFLICT OF INTEREST

17. At all relevant times, UBH has been operating under a conflict of interest because, on the one hand, UBH is a claims decision-maker that must act in the best interests of beneficiaries, including Joseph D. and Colin D., and, on the other hand, UBH is incentivized to save Morgan Stanley money by denying claims, including Plaintiffs' claim, so that Morgan Stanley will continue to keep UBH as its claims administrator.

18. UBH's determination was influenced by its conflict of interest.

19. At all relevant times, UBH's conflict of interest extended to and infected its non-examining medical consultants that examined documents and rendered opinions in connection with Plaintiffs' claim.

20. Upon information and belief, during all relevant times, the non-examining paper reviewers, Kathy C. Scott-Gurnell, M.D., Michael Soto, M.D., and Sabah Chammas, M.D. were in-house, salaried medical consultants employed by UBH.

21. UBH knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

22. Upon information and belief, UBH pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews of UBH's insureds.

23. Because the medical consultants derive substantial income from performing file reviews of UBH insureds, the medical consultants have an incentive to provide file reviews that UBH deems favorable in order to perform future file reviews for UBH.

24. UBH has failed to take active steps to reduce potential bias and to promote the accuracy of its coverage determinations.

## **THE OPTUM GUIDELINE**

25. In evaluating participant claims for treatment, UBH relies on guidelines provided by Optum. In this particular instance, UBH relied on the Optum Guideline.

26. For a member to be admitted to an in-patient program for mental health issues, the Optum Guideline requires that the "member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive level of care" or the "member's condition and/or the member's history of response to treatment suggest that there is imminent or current risk of harm to self, others, and/or property which cannot be safely, efficiently, and effectively managed in a less intensive level of care."

27. The Optum Guideline requires that the admission criteria continue to be met to qualify for continuing stay.

28. Residential treatment for mental illnesses always involves sub-acute in-patient treatment. If a patient is acute – threatening the lives of themselves or others, or if they are

psychotic – they could not be cared for in a residential treatment setting.

29. The Optum Guideline therefore ignores generally accepted medical practice, and is therefore an unreasonable guideline.

## DEFENDANTS' ERRONEOUS DETERMINATIONS

30. Joseph D.'s minor son, Colin D., has suffered from an inability to control his emotions, often resulting in violent outbursts, from an early age.

31. After Joseph D. tried and failed to adequately deal with Colin D.'s problems via mental health treatment from his pediatrician, several licensed therapists, and a psychiatrist; prescription mood regulators; a boys Catholic preparatory school; a military camp; a partial hospitalization; and an intensive outpatient program, Joseph D. sought the advice of a therapeutic placement specialist. On that specialist's recommendation, UBH authorized treatment for Colin D. at Viewpoint Center – a short-term residential facility – from August to September of 2018.

32. On discharge, the unanimous recommendation of the multidisciplinary treatment team at Viewpoint Center was that Colin D. attend a long-term residential treatment center.

33. UBH initially authorized long-term residential treatment for Colin D. at The Heritage Community ("Heritage").

34. On September 26, 2018, with UBH authorization, Colin D. enrolled in a long-term residential treatment at Heritage.

35. Following his admission to The Heritage Community on September 26, 2018, Colin D. continued to receive medically necessary treatment there for several more months, until December 21, 2019.

36. On or about October 11, 2018, UBH decided that coverage for Colin D.'s treatment was "not available" beyond September 29, 2018 – a mere 3 days post-admission – because "your

child's condition no longer meets Guidelines for further coverage of treatment in this setting." The "Guidelines" to which this letter refers is the Optum Guideline.

37. UBH's October 11, 2018 no-coverage decision was inconsistent with the Optum Guideline. Colin D.'s claim met all necessary criteria of the Optum Guideline.

38. But as described above, the Optum Guideline itself ignores generally accepted medical practice.

39. UBH's October 11, 2018 no-coverage finding diametrically contradicts the evaluations and recommendations of: (a) the physicians and treatment specialists at Viewpoint Center; (b) Colin D.'s personal pediatric physician, psychiatrist, and therapist; and (c) the physicians and treatment specialists at The Heritage Community.

40. The physicians and treatment specialists at The Heritage Community wrote to UBH on or about April 4, 2019 that, "consistent with best clinical practices":

> [Colin D.] met your criteria for admittance to our program and continues to meet the continuing stay criteria. [Colin D.] requires 24 hour 7 days a week care in order to keep himself and others safe. Before coming to Heritage he had violent outbursts and his cognitive and behavioral functioning interfered with his daily living, making it impossible for him to be managed in a lower level of care. Since coming to Heritage he has continued to show questionable judgment that would put him or others in danger, he has shown violent outbursts that have led to the destruction of property, and he has continued to struggle with his daily living skills without support.
>
> ***
>
> It is true that he has made progress, but it is not accurate that there are no safety concerns, and that he does not meet the criteria for continued care.

41. UBH's initial adverse determination letter provided insufficient explanation as to how the adverse determination was reached. Nor did the adverse determination letter specify what information was necessary from Joseph D. to perfect the claim on appeal.

6

42. As a result of UBH's no-coverage determination, Joseph D. could only pay for Colin D.'s medically necessary treatment until December 21, 2019.

43. After UBH's no-coverage determination, Joseph D. sent three separate, timely appeal letters.

44. UBH's response to each of those letters was a further denial.

45. In none of UBH's letters to Joseph D. did it describe what information Joseph D. could provide that might help UBH make a decision.

46. Using his best judgment, Joseph D.'s appeals provided UBH with several supportive letters of medical necessity from Colin D.'s treating providers, explanations of the extensive efforts to treat Colin D. using less extreme methods, explanations of Colin D.'s history of violent behavior and threats of violence, and other additional information.

47. UBH denied all of Joseph D.'s appeals.

48. Rather than acknowledging Colin D.'s long history of mental health problems, including, but not limited to, his need for treatment at the residential treatment level of care, UBH denied Colin D.'s treatment on the basis that he was "doing better" or had "made progress" in his first three days at Heritage.

49. None of UBH's denials addressed Colin D.'s uncontrolled rageful and violent episodes that lead up to his admission to Viewpoint and then Heritage.

50. None of UBH's denials addressed Colin D.'s continued anger, emotional dysregulation, aggression, and poor peer relationships throughout his stay at Heritage.

51. None of UBH's denials acknowledged that throughout his stay at Heritage, Colin D. continued to have multiple violent outbursts which led to the destruction of property, that Colin D. continued to show questionable judgment that would put him or others in danger, or that he

continued to struggle with daily living skills.

52. And none of UBH's denials addressed the opinion of Colin D.'s treating providers that Colin D. would decompensate at a lower level of care and pose a risk to himself or others.

53. None of UBH's medical reviewers or other employees or agents ever examined Colin D. in person.

54. Each of the three doctors who reviewed Colin D.'s claim for UBH were employees of UBH, and each used substantially the same language to deny Colin D.'s claim.

55. UBH's denials also failed to account for the multiple methods of treatment of Colin D. that were attempted prior to his admission at Heritage.

56. Colin D.'s first outpatient therapy began more than ten years ago, when Colin D. had just started Second Grade. Colin D.'s first medication for behavioral issues was prescribed two years later when Colin D. was in Fourth Grade. Many therapists, doctors, and changes to Colin D.'s medication regimen were attempted over the course of the next four years. Eventually, Colin D. was sent to an all-boys Catholic preparatory school for high school and a military camp during the summer.

57. In April 2018, Colin D. was admitted to a partial hospital program at Princeton House Behavioral Health for three weeks. After the partial hospitalization, Colin D.'s treatment continued at Princeton House's intensive outpatient program.

58. In August 2018, Colin D. was admitted to ViewPoint Center, a short-term inpatient mental health treatment and assessment hospital that provides comprehensive diagnostic and treatment assessment. Colin D.'s admission to Heritage immediately followed his discharge from ViewPoint Center.

59. Defendants denied Joseph D.'s appeals despite the mandates of the Parity Act,

despite the medical consensus among Colin D.'s treating providers that his admission and continuing care at Heritage was medically necessary, and despite the medical consensus among Colin D.'s treating providers that his admission and continuing care at Heritage met Defendants' criteria.

60. This action followed the denial of two internal appeals, one external appeal, and the exhaustion of all administrative remedies available to Plaintiffs.

### COUNT I
### (Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))

61. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 60 above.

62. This count is authorized by 29 U.S.C. §1132(a)(1)(B).

63. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Optum and UBH, acting as agents of the Plan, to "discharge [their] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. §1104(a)(1).

64. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue in the pre-litigation appeal process. 29 U.S.C. §1133(2).

65. Defendants breached their fiduciary duties to Colin D. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in Colin D.'s interest, and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of Colin D.'s claims.

66. Defendants have financial conflicts of interest with respect to administering, monitoring, and eventually denying Colin D.'s claims.

67. UBH and its medical consultants were influenced by the financial conflict of interest when deciding to deny Colin D.'s benefits under the Plan.

68. The unlawful behavior of Defendants is evidenced by the following:

    a. Denying Plaintiffs' claim at a time when Defendants knew that Plaintiffs were entitled to said benefits under the terms of the Plan, in bad faith and contrary to the Plan;

    b. Terminating previously approved benefits in the absence of significant medical improvement;

    c. Ignoring Colin D.'s treating providers' assessments of his medical conditions, without any basis or explanation for doing so in violation of 29 C.F.R. § 2560.503-1(h)(2)(iv);

    d. Relying on non-examining medical consultants to deny a claim supported by the treating providers;

    e. Relying on non-examining medical consultants who did not consider or comment on all relevant information;

    f. Relying on non-examining medical consultants on appeal who improperly afforded deference to the adverse opinions and reports of non-examining medical consultants previously obtained by UBH, in violation of 29 C.F.R. §2560.503-1(h)(2)(ii) and (v);

    g. "Cherry-picking" and selectively highlighting certain factors to cast a favorable light on its position, while ignoring the conclusions and reports of Colin D.'s treating providers regarding the conditions for which they render treatment;

    h.  Engaging in a pattern of procedural irregularities to advance its own corporate interests in terminating benefits, to the detriment of Plan participants;

    i.  Failing to provide a "full and fair review" as Defendants were obligated to do pursuant to 29 C.F.R. §2560.503-1(h)(4);

    j.  Failing to provide Plaintiffs with an adequate description of any additional material or information necessary to perfect their claim in violation of 29 C.F.R. §2560.503-1(g)(1)(iii);

    k.  Failing to maintain and utilize "reasonable claims procedures" as it was obligated to do pursuant to 29 CFR § 2560.503-1(b), in violation of ERISA;

    l.  Failing to follow its own internal claims administration policies and procedures;

    m.  Failing to conduct an adequate medical review to determine the specific basis of Colin D.'s admission and continuing care;

    n.  Consistently acting in its own corporate interests instead of those of the Plan and its participants; and

    o.  Failing to provide Plaintiffs all materials relevant to their claim.

69.    Instead of conducting a full and fair review, UBH created an artificial reason for denying Plaintiffs' claim. UBH made conclusions that are directly contradicted by the medical evidence and misinterpreted or ignored the conclusions of Colin D.'s treating providers about the conditions for which they rendered treatment/evaluation.

70.    UBH placed its financial interests in reducing its expenses and increasing its profitability above Plaintiffs' interests under the Plan.

71.    The actions of Defendants in failing to provide coverage for Colin D.'s medically

necessary treatment at Heritage are a violation of the terms of the Plan and its medical necessity criteria.

72. Despite the facts that (a) The Plan provides for insurance coverage for long-term residential treatment and (b) generally accepted standards of care are widely available and well-known to Optum, Optum promulgated the Optum Guideline, which is unduly restrictive in comparison with those that are generally accepted.

73. As a result of UBH's use of the Optum Guideline, Plaintiffs' claims for long-term residential treatment, which should have been covered by The Plan, were wrongfully denied.

74. As a result, Plaintiffs have suffered money damages.

## SECOND CAUSE OF ACTION
### (Claim for Violation of the Parity Act and the ACA Under 29 U.S.C. §1132(a)(3))

75. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 74 above.

76. The Parity Act is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the Parity Act.

77. The requirements of the Patient Protection and Affordable Care Act (the "ACA") also apply to the Plan through its incorporation into ERISA and preclude the ability of the Plan to restrict or exclude coverage for programs or facilities that are licensed under state law to provide the services in question.

78. Generally speaking, the Parity Act requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

79. Specifically, the Parity Act prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the

predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

80. Impermissible nonquantitative treatment limitations under the Parity Act include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(H).

81. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for Colin D.'s treatment at Heritage include sub-acute inpatient treatment, custodial care, and skilled care settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.  For none of these types of treatment do Defendants exclude coverage for medically necessary care of medical/surgical conditions based on a need for 24-hour care, an imminent or current risk of harm to self, others, and/or property, or because the condition cannot be safely, efficiently, and effectively treated in a less intensive level of care in the manner they excluded coverage of treatment for Colin D. at Heritage.

82. In addition, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the criteria utilized by Defendants, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

83. Defendants' imposition of requirements for coverage of the sub-acute treatment provided at Heritage that are more stringent than those required to be licensed as a residential

treatment facility under Utah law is a violation of the ACA.

84. Defendants' actions, as outlined above, have caused damage to Plaintiffs in the form of denial of payment.

85. Defendants are responsible to pay Colin D.'s medical expenses as benefits due under ERISA, the Parity Act, and the ACA, together with prejudgment interest and attorney fees and costs.

**WHEREEFORE**, Plaintiffs demand judgment against Defendants:

A. Judgment in the total amount that is owed for Colin D.'s medically necessary treatment at Heritage under the terms of the Plan, together with interest thereon;

B. For the costs of this action and Plaintiffs' attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g)(1);

C. For such other and further relief as may be deemed just and proper by the Court.

Respectfully submitted,

By: /s/ Scott M. Riemer
Scott M. Riemer (SR 5005)
RIEMER HESS LLC
*Attorneys for Plaintiffs*
275 Madison Avenue, 26th Floor
New York, New York 10016
(212) 297-0700
sriemer@riemerlawfirm.com